**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PHUONG THANH NGUYEN, | : | |
| | | Civil Action No. 10-4525 (JBS) |
| Petitioner, | : | |
| | | |
| v. | : | **OPINION** |
| | | |
| WARDEN KIRBY, et al., | : | |
| | | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner pro se
Phuong Thanh Nguyen
F.C.I. Fairton
P.O. Box 420
Fairton, NJ 08320

**SIMANDLE**, District Judge

   Petitioner Phuong Thanh Nguyen, a prisoner currently confined at the Federal Correctional Institution at Fairton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The Respondents are Warden Kirby

---

   [1] Section 2241 provides in relevant part:

   (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
   (c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

and I.C.E. (the Bureau of Immigration and Customs Enforcement, hereinafter, "BICE").

Because it appears from a review of the Petition that Petitioner is not entitled to relief at this time, the challenge to the immigration detainer will be denied and the citizenship claim will be dismissed without prejudice.  See 28 U.S.C. § 2243.

## I.   BACKGROUND

Petitioner is confined pursuant to his conviction on various drug charges in the United States District Court for the Eastern District of Virginia and resultant sentence to a term of imprisonment of 144 months.  See United States v. Nguyen, Criminal No. 05-0234 (E.D. Va.).

Petitioner asserts that he was born in Vietnam.  He further asserts that he became a naturalized citizen of the United States by virtue of the fact that both of his parents became naturalized citizens of the United States, after Petitioner entered this country, and while he was still a minor.  He alleges that he requested a Form N-600 from BICE in August 2010, to begin the process for establishing his derivative citizenship, but that he has not received the form yet.

Petitioner alleges that the Bureau of Immigration and Customs Enforcement is treating him as an alien and that BICE has issued an immigration detainer to the Bureau of Prisons. Petitioner alleges that the immigration detainer prevents his

2

participation in certain BOP programs, including low-custody camps and furlough programs.

Petitioner asks this Court to dismiss the detainer because of his alleged derivative citizenship.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970). Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief. See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773

F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2255.

### III. ANALYSIS

A.   Immigration Detainer

Petitioner alleges that an immigration detainer[2] has been lodged against him, preventing him from participating in various prison programs, including low-custody and furlough programs.

With respect to his eligibility for a lower-security placement, halfway house, community release or work release programs, the incidental effect of this detainer on his eligibility for such program participation does not violate any constitutional right to due process or equal protection.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or enacted law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  With respect to convicted and sentenced prisoners, "[a]s

---

[2] An immigration detainer:

> serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien.  The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

8 C.F.R. § 287.7(a).

long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995).  Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990) (prisoner possesses liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980) (prisoner possesses liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).

It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement.  See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.

Governments, however, may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But

these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest).  Petitioner does not allege either that some statute confers a liberty interest in being free from the constraints imposed against prisoners subject to an immigration detainer or that the conditions under which he is confined present "atypical and significant hardships."  Thus, Petitioner cannot establish any deprivation of his liberty interests under the Due Process Clause.

This issue has been litigated frequently with respect to federal prisoners.  For example, the regulation limiting participation in the early release program established in 18 U.S.C. § 3621(b) has withstood challenge by persons subject to immigration detainers.  United States Code Title 18 Section 3621(b) requires the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance

addiction or abuse." 18 U.S.C. § 3621(b). As an incentive for prisoners to successfully complete the program, "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B). Pursuant to these statutory sections, and in an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the Bureau has promulgated regulations prescribing certain additional early release criteria, <u>inter alia</u> excluding INS detainees from consideration for early release. 28 C.F.R. § 550.58(a)(1)(I). This is analogous to the type of program limitation that Petitioner mentions.

    In <u>Lopez v. Davis</u>, 531 U.S. 230 (2001), the Supreme Court held that it was a proper exercise of discretion by the Bureau of Prisons to categorically deny eligibility for early release to prisoners with "a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses," 28 C.F.R. § 550.58(a)(1)(iv), or to prisoners whose current offense is one of certain enumerated felonies involving the use or attempted use of force, or involving the carrying, possession, or use of a firearm or other dangerous weapon, or involving sexual abuse upon children, 28

U.S.C. § 550.58(a)(1)(vi).  In reaching this conclusion, the Court first noted that the language of § 3621(e)(2)(B) grants the Bureau discretion to reduce a prisoner's sentence for successful completion of a substance abuse treatment program, but fails to define any parameters by which the Bureau should exercise that discretion.

> In this familiar situation, where Congress has enacted a law that does not answer "the precise question at issue," all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap "in a way that is reasonable in light of the legislature's revealed design."  We think the agency's interpretation is reasonable both in taking account of preconviction conduct and in making categorical exclusions.

Lopez, 531 U.S. at 242 (citing, inter alia, Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 842 (1984))(other citations omitted).  Thus, "the statute's restriction of early release eligibility to nonviolent offenders does not cut short the considerations that may guide the Bureau."  Lopez, 531 U.S. at 242.  See also Magnin v. Beeler, 110 F.Supp.2d 338 (D.N.J. 2000) (upholding 28 C.F.R. §550.58(a)(1)(vi), before Lopez, as a valid exercise of the Bureau's discretion).

The Court of Appeals for the Eighth Circuit has stated that it sees no difference between the categorical exclusion examined by the Supreme Court in Lopez v. Davis and the categorical exclusion of prisoners subject to an immigration detainer in 28 C.F.R. § 550.58(a)(1)(I), holding that the latter is also within

the Bureau's discretion.  United States v. Lopez-Salas, 266 F.3d 842, 848 (8th Cir. 2001).  Here, the programs mentioned by Petitioner, including those involving furlough or lower security placement, are ones in which "custody" is a consideration, similar to the early release program, and Petitioner has not suggested any reason why it is unreasonable for the prison authorities to take into account an immigration detainer in determining eligibility for such programs.  This Court agrees with the Eighth Circuit that the existence of an immigration detainer is a legitimate factor to consider in determining eligibility for custody-related programming.

Finally, the exclusion of persons subject to an immigration detainer does not violate the Equal Protection Clause.  Program limitations such as those challenged here classify prisoners as those who are subject to custodial considerations (including those who have detainers lodged against them) and those who are not, not on the basis of alienage.  See McLean v. Crabtree, 173 F.3d 1176, 1185-86 (9th Cir. 1999), cert. denied, 528 U.S. 1086 (2000).  Accordingly, "the Equal Protection Clause requires only that the classification rationally further a legitimate state interest."  See Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

Excluding prisoners subject to detainers or other custodial considerations from participation in programs involving custody issues is rationally related to prison authorities' legitimate

interest in preventing such prisoners from fleeing.  See McLean v. Crabtree, 173 F.3d at 1185-86.  Accordingly, the detainer, and the program limits it triggers, do not violate the Equal Protection Clause.

B.   The Naturalization Issue

Petitioner also asks this Court to resolve his citizenship claim.[3]

To invoke habeas corpus review by a federal court, a federal prisoner must satisfy two jurisdictional requirements: the status requirement that the person be "in custody," and the substance requirement that the petition challenge the legality of that custody on the ground that it is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); see also Maleng v. Cook, 490 U.S. 488, 490 (1989); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 8.1 (4th ed. 2001).  As Petitioner is not in custody pursuant to any immigration proceeding, and a decision in his favor would not lead to immediate or earlier release, Petitioner's citizenship claim is not properly brought

---

[3] Petitioner attaches to his Petition documents suggesting that he was born on December 23, 1976, and that both of his parents were naturalized in 1993, when Petitioner was 16.  At that time, the law provided, in pertinent part, that a child born outside the United States of alien parents who legally entered the United States acquired derivative citizenship upon the naturalization of both parents while the child is under the age of eighteen years.  See 8 U.S.C. § 1432(a) (repealed in 2000).

10

in habeas.  However, this Court may re-characterize the nature of the Petition to avoid "inappropriately stringent application of formal labeling requirements."  See Castro v. United States, 540 U.S. 375, 380-81 (2003) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).  Accordingly, this Court will re-characterize the Petition as one arising under 8 U.S.C. § 1503(a).

    Title 8 U.S.C. § 1503(a) provides, in pertinent part:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding.  ...

    The Immigration and Nationality Act requires that a person asserting a claim of derivative citizenship initially apply to the INS for a Certificate of Citizenship.  See U.S. v. Breyer, 41 F.3d 884, 891-93 (3d Cir. 1994); 8 U.S.C. § 1452; 8 C.F.R. § 341.1-.7 (1994).  Only if such an applicant is denied a Certificate of Citizenship may he or she then initiate a declaratory judgment action in federal court pursuant to 8 U.S.C. § 1503(a).  Breyer, 41 F.3d at 891.

Petitioner has not yet made any such application. Accordingly, this Court lacks jurisdiction, at this time, to resolve Petitioner's citizenship claim.[4]  Accordingly, the citizenship claim must be dismissed as premature, without prejudice to Petitioner returning to federal court after exhaustion of his administrative remedies.

## IV. CONCLUSION

For the reasons set forth above, the challenge to the detainer will be denied and the citizenship claim will be dismissed without prejudice.  An appropriate order follows.

        **s/ Jerome B. Simandle**
Jerome B. Simandle
United States District Judge

Dated:  **September 24, 2010**

---

[4] Petitioner attaches to his Petition a letter dated August 30, 2010, reflecting that he first requested a Form N-600 in a telephone conversation with a BICE official on August 2 or 9, 2010.  In light of that short passage of time, this Court is not prepared to find that pursuit of his administrative remedy would be futile.